Steven A. Schwartz*
Beena M. McDonald (CA Bar No. 365776)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 645-4720
sas@chimicles.com
bmm@chimicles.com

James J. Rosemergy*
**CAREY & DANIS LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 725-7700
jrosemergy@careydanis.com

Todd S. Eagan, Esq. (CA Bar No. 207426)
**EAGAN LAW CORPORATION**
401 Wilshire Boulevard, 12th Floor
Santa Monica, CA 90401
Ph: (310) 304-3302
teagan@eagan.law

*Attorneys for Plaintiff and the Putative Class*

**Pro hac vice forthcoming*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BARBARA MULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SF MARKETS, LLC, d/b/a SPROUTS FARMERS MARKET; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. '26CV5070 BJC DEB<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;<br>2. Violation of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.;<br>3. Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;<br>4. Breach of Express Warranty; and<br>5. Unjust Enrichment. |

Plaintiff Barbara Mullen ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant SF Markets, LLC, doing business as Sprouts Farmers Market ("Sprouts" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations pertaining to herself, which are based upon personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff Barbara Mullen ("Plaintiff"), on behalf of herself and a proposed class of purchasers, brings this consumer-protection class action against SF Markets, LLC, doing business as Sprouts Farmers Market ("Sprouts" or "Defendant"), the grocery retailer that formulates, specifies, labels, and sells the Sprouts-brand line of private-label packaged foods. The dispute concerns a single, verifiable representation appearing on the front of a product package: that the edible oil in the Product is "Made With Avocado Oil" (the "Avocado Oil" Representation).

2. The product at issue is Sprouts' Organic Sea Salt & A Hint of Lime Tortilla Chips Made With Avocado Oil (the "Product"). The Product's principal front package bears the phrase "Made With Avocado Oil," and its ingredient statement declares avocado oil and no other edible oil. A purchaser reading that label will conclude two things: 1) that the Product contains avocado oil, and 2) that avocado oil is the only oil it contains.

3. Neither proposition holds, according to independent laboratory analysis. In 2026, food chemists at the University of California, Davis published the first peer-reviewed investigation of whether the premium oils named on the labels of finished, commercially processed foods correspond to the oil actually present in those foods.[1] The UC Davis Study asked the question of what is inside the package after the oil has been fried, emulsified, or blended into a finished food.

---

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

4. The answer was that, as it pertains to avocado oil, the label frequently does not accurately describe the contents. Of 54 avocado-oil-labeled samples analyzed, 48 — eighty-nine percent — exhibited fatty acid and sterol profiles that the Study classified as inconsistent with authentic avocado oil.[2] Within the chip category, which is the category into which the Product falls, 26 of 28 samples (93%) were classified as inconsistent.[3]

5. The Product was among the samples the Study analyzed. The Study purchased and analyzed two independently obtained production lots of each product, each in duplicate, and reported the complete measured fatty acid profile of every sample in and the complete measured sterol profile of every sample. Both lots of the Product were classified as inconsistent with authentic avocado oil.

6. The Study classified both independently purchased lots of the Product as inconsistent with authentic avocado oil, and found that one of the two lots additionally exhibited the fatty acid pattern most diagnostic of seed oil substitution.

7. The deviations reported for the Product follow the same pattern the Study's authors identified as diagnostic of substitution or dilution with cheaper commodity oils: depressed palmitic acid, depressed palmitoleic acid, and depressed cis-vaccenic acid, together with elevated stearic acid, campesterol, stigmasterol, and delta-7-avenasterol. These findings do not occur in authentic avocado oil. They occur when authentic avocado oil is replaced or extended with other seed oils.

8. Avocado oil costs meaningfully more than soybean, canola, sunflower, or safflower oil, and manufacturers and retailers that name it on the front of a package charge a premium for it. Plaintiff and the members of the proposed Class paid that charge. They did not receive what was purchased. Plaintiff brings this action under California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law, and under the common law of express warranty and unjust enrichment, to recover the premium and to stop the practice.

---

[2] *Id.*
[3] *Id.*

## PARTIES

9. Plaintiff Barbara Mullen is a natural person who resides in and is a citizen of San Diego, California.

10. During the Class Period, Plaintiff purchased the Product Sprout's Organic Sea Salt & A Hint of Lime Tortilla Chips from a Sprout's location (store #227) in San Diego, California for personal and household consumption, most recently on or about February 3, 2026, March 14, 2026 and March 26, 2026 at a price of approximately $4.99 per bag.

11. Before each purchase, Plaintiff read and saw the front-of-package statement that the Product is "Made With Avocado Oil," and read and saw that the ingredient statement declared avocado oil and no other edible oil. Plaintiff understood those statements to mean that the oil in the Product was avocado oil. That understanding was material to Plaintiff's decision to buy the Product and to pay the price Defendant charged for it.

12. Had Plaintiff known that the Product's oil fraction was inconsistent with authentic avocado oil and reflected substitution or dilution with undisclosed seed oils, she would not have purchased the Product, or would have paid substantially less for it. Plaintiff would purchase products containing pure avocado oil if it were an option.

13. Plaintiff Mullen did not receive the benefit of her bargain and suffered economic injury in the amount of the premium she paid for an avocado-oil-labeled Product that did not, in fact, contain the represented ingredient to the extent claimed.

14. Defendant SF Markets, LLC is a limited liability company doing business as Sprouts Farmers Market incorporated under the laws of the State of Delaware and doing business in California.

15. Upon information and belief, Defendant designs, specifies, sources, labels, markets, distributes, and sells Sprouts-brand private-label products, including the Product, and controls the content of the Product's packaging and ingredient statement.

16. Defendants Does 1 through 20 are persons or entities whose true names and capacities are presently unknown to Plaintiff and who are in some manner responsible for the conduct alleged. Plaintiff reserves the right to amend this Complaint to allege their true names and capacities once ascertained.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The proposed Class comprises far more than 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and minimal diversity exists because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18. This Court has personal jurisdiction over Defendant because it intentionally and purposefully placed the Products into the stream of commerce within this District.

19. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant regularly transacts business in this District and is subject to personal jurisdiction in this District. Additionally, a substantial part of the events giving rise to the claims occurred here: Defendant marketed and sold the mislabeled Product in this District and Plaintiff purchased the Product in this District.

## FACTUAL ALLEGATIONS

### *A. The Avocado Oil Representation is Material to Consumers and Demands a Price Premium*

20. The Avocado Oil Representation on the Product's front label is material to consumers with respect to purchasing the Product and they pay a premium for it.

21. Avocado oil is marketed and sold as a premium edible oil, valued for its high concentration of monounsaturated fats and its perceived nutritional advantages over conventional seed and vegetable oils.

22. These qualities motivate consumers who are seeking to avoid other seed oils to pay a premium price for products made with avocado oil as compared to products made with alternative, cheaper, oils. For those consumers the presence of an undisclosed

seed oil is not a difference of degree or grade; it defeats the purpose of the purchase entirely. Defendant markets the Product to precisely that consumer segment.

23. Avocado oil is materially more expensive to source than seed oils such as soybean, canola, sunflower, safflower, and corn oil. Manufacturers—including Defendant—have accordingly marketed processed foods as made with avocado oil in order to command a price premium over conventional seed-oil counterparts. The UC Davis Study described herein documented that premium across all three categories it examined.

24. Consumers have no practical means of verifying which oil is present in a finished, processed food. Detecting substitution requires solvent extraction of the lipid fraction followed by gas-chromatographic analysis of fatty acid methyl esters and sterols against international reference standards—laboratory work no ordinary consumer can perform. Refined avocado oil and refined seed oils are similar in color, texture, and flavor, so the substitution cannot be detected by taste, appearance, or use.

25. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Products reasonably expect to know what type of oil they are consuming. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front of-package claims . . . to be the primary lipid source of the product."[4] Consumers purchased, and continue to purchase, the

[4] *Id.*

Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with avocado oil. Plaintiff and Class members would have paid less for the Product, or would not have purchased it at all, if not

for the Avocado Oil Representation. Therefore, Plaintiff and Class members have suffered a financial injury in the form of paying a price premium.

***B. Defendant's Products and Its Representations***

26. Sprout's Organic Sea Salt & A Hint of Lime Tortilla Chips bear the front-of-package representation "Made with Avocado Oil."




**[INTENTIONALLY BLANK]**

27. The Product's ingredient statement discloses no oil other than avocado oil. It does not contain any qualifying or hedging disclosure—such as "and/or," "may contain," or a reference to trace or incidental ingredients—that would put a reasonable consumer on notice that an oil other than avocado oil might be present.[5]

28. A reasonable consumer who reads "Made with Avocado Oil" on the front the package, and then finds "Avocado Oil"—and only "Avocado Oil"—on the ingredient statement, reasonably understands that the oil in the Product is avocado oil.

29. Unfortunately for Plaintiff and the Class Members, Defendant's Product is not made with avocado oil. As set forth in detail below, peer-reviewed scientific testing establishes that the oil from the Product is not compositionally consistent with authentic avocado oil, and instead exhibits the compositional profile of cheaper, refined seed oils. The Avocado Oil Representation is therefore false and misleading.

***C. The UC Davis Study's Design and Findings***

30. Despite being advertised as exclusively containing avocado oil, Defendant's Product contains a diluted blend of oils.

31. The 2026 UC Davis Study evaluated the authenticity of avocado oil used as the sole declared oil in consumer foods. In doing so, 74 commercially processed chips, mayonnaise, and salad dressing products purchased from retail and online sources in California in 2025 and 2026 were evaluated. Two separate production lots of each product were purchased, and each lot was analyzed in duplicate. The Products were among the products tested.

32. Researchers extracted the oil fraction from each product—by Soxhlet extraction with n-hexane for chips, and by freeze-thaw centrifugation for mayonnaise and dressings—then analyzed the FAME profile and the sterol profile of each extract

---

[5] https://shop.sprouts.com/store/sprouts/products/63674503-sprouts-organic-sea-salt-a-hint-of-lime-tortilla-chips-made-with-avocado-oil-9-oz.

by gas chromatography with flame ionization detection, and compared the results against the compositional ranges for authentic oils in the Codex Standard.

33. The Study's classification methodology was deliberately conservative and favorable to manufacturers. A deviation limited to a single fatty acid or sterol marker and not exceeding 10% beyond the applicable Codex limit was disregarded entirely, and the sample treated as consistent. A sample with no more than two markers marginally exceeding that allowance, and without concordant deviations across other markers, was treated as merely "borderline"—and where a sample was fully consistent in one profile and borderline in the other, it was counted as consistent. Only samples exhibiting multiple deviations, or patterns inconsistent with authentic reference profiles, were classified as inconsistent.

34. The Study found that samples classified as inconsistent with authentic avocado oil consistently exhibited reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), and cis-vaccenic acid (C18:1 (n-7)), together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, and $\Delta^7$-avenasterol — a chemical signature the Study's authors identified as characteristic of substitution or dilution with lower cost vegetable and other seed oils rather than authentic avocado oil.

35. The Study identified cis-vaccenic acid as a strong discriminatory marker for avocado oil authenticity. Samples classified consistent had a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids; inconsistent samples had a mean of 1.7% ± 0.5%—a range aligning with typical vegetable oil profiles ($p < 0.001$).

36. Of the 54 avocado-oil-labeled products tested, 48—89%—were classified compositionally inconsistent with authentic avocado oil: 93% of chips, 100% of salad dressings, and 71% of mayonnaise. By contrast, 19 of 20 olive-oil-labeled products in the same categories were classified consistent. Because the olive-oil-labeled products were subjected to identical extraction and analytical procedures in identical food matrices, the widespread inconsistency among avocado-oil-labeled

products cannot be attributed to testing artifacts, ordinary manufacturing variability, or limitations inherent in recovering oil from processed foods.

37. The Study further found that retail price was not a reliable indicator of authenticity: products labeled with avocado oil commanded a price premium over vegetable-oil counterparts regardless of whether their oil fraction was actually consistent with authentic avocado oil, meaning that consumers could not protect themselves from adulteration by paying a higher price.

38. The Study also anticipated the obvious defense – food processing – and found that the magnitude of the deviations found in the products cannot be explained by frying, by processing, or by natural variation.

***D. The Study's Sample-Specific Findings as to Defendant's Products***

39. In the product information accompanying the Study, Defendant's Product is identified as Sample Nos. 25 and 26.[6]

40. The Study classified both lot samples of the Products as inconsistent with the composition of avocado oil.[7]

41. As a result, the oil in the Product is not avocado oil, or at a minimum, not fully avocado oil because it is cut with other seed oils or is otherwise impure.

42. The Study thus revealed issues in Defendant's processes. The substitution or dilution of the declared avocado oil occurred within Defendant's supply chain — whether at Defendant's contract manufacturer or co-packer, in the bulk oil Defendant sourced or specified for the Product, or otherwise before the Product left Defendant's control — and reflects Defendant's sourcing, specification, and quality-control practices rather than any isolated event. That the Study tested two independently purchased production lots, obtained on different occasions, and found both inconsistent with authentic avocado oil confirms that the deficiency is not a one-off anomaly confined to a single lot but a systemic feature of how the

[6] UC Davis, Studied Products AFRES, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/deta ils.
[7] *Id.*

Product is formulated and supplied. Because the avocado oil substitution and/or dilution with cheap oils occurred at Defendant's facilities or the facilities of third party suppliers under their control, the absence of avocado oil and inclusion of cheap oils affects all batches and lots of Defendant's Product, including Plaintiff's purchase.

43. Defendant knew or should have known that its marketing and labeling of its Product is misleading to consumers. Adulteration of avocado oil has been publicly documented since at least 2020.

44. In 2020, researchers at UC Davis published the first report on the quality and purity of avocado oil sold in the United States, finding that a substantial majority of the bottled avocado oil products tested were either oxidized or adulterated with other oils. In 2022, the same laboratory identified cis-vaccenic acid (C18:1 (n-7)) as a specific analytical marker capable of detecting seed oil adulteration in avocado oil. In 2023, the same laboratory published further findings on the purity and quality of private-label avocado oil.

45. Defendant is a sophisticated food manufacturer with access to analytical testing capability, supplier-qualification programs, and quality-control resources. In light of the published and publicized history of avocado oil adulteration, Defendant knew or should have known of the substantial risk that bulk avocado oil purchased for use in the Product would be diluted or substituted, and had both the means and the obligation to verify the authenticity of the oil it declared on its labels. Defendant either failed to conduct such verification or conducted it and sold the Product anyway.

46. Plaintiff and the Class read and reasonably relied upon Defendant's representations that the Product they purchased contained avocado oil as the sole oil ingredient. Plaintiff and the Class reasonably understood these representations to mean that the

Product's oil fraction was, in fact, composed of authentic avocado oil, and Plaintiff paid a price premium for the Products on that basis.

47. Had Defendant disclosed that the Product's oil fraction was inconsistent with authentic avocado oil and instead reflective of undisclosed substitution or dilution with cheaper seed oils, Plaintiff and Class members would not have purchased the Product, or would have paid substantially less for it. Plaintiff did not receive the benefit of their bargain and suffered economic injury in the amount of the premium they paid for the avocado-oil-labeled Product that did not, in fact, contain the represented ingredient to the extent claimed.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of herself and the following proposed classes:

a. Nationwide Class: All persons in the United States who purchased the Product during the applicable statute-of-limitations period preceding the filing of this action through the date of class certification (the "Class Period").

b. California Subclass: All persons who purchased the Product in the State of California during the Class Period.

49. Excluded from the proposed classes are: Defendant and its officers, directors, members, employees, and affiliates; any entity in which Defendant holds a controlling interest; the judicial officers and court personnel assigned to this case and their immediate families; and any person who timely and validly requests exclusion.

50. Numerosity. The members of each proposed class are so numerous that joinder is impracticable. The Product is a nationally distributed retail grocery item sold across Defendant's store network, and upon information and belief Defendant has sold hundreds of thousands of units during the Class Period. Class membership can be determined from Defendant's sales, distribution, and loyalty-program records.

51. Commonality and Predominance. Common questions of law and fact predominate over individual questions, including:

a. whether the Product is compositionally consistent with authentic avocado oil;

b. whether the Product contains one or more undisclosed edible oils other than avocado oil;

c. whether the representation that the Product is made with avocado oil, and the declaration of avocado oil as the sole edible oil, are false or misleading to a reasonable consumer;

d. whether those representations were material;

e. whether Defendant knew or should have known, in light of the published literature on avocado oil adulteration and its own sourcing and quality-assurance obligations, that the representations were false or misleading;

f. whether Defendant's conduct violates the CLRA, the UCL, the FAL, and the warranty and unjust enrichment doctrines invoked here;

g. whether the representations caused Plaintiff and the Class to pay a price premium; and

h. the nature and scope of the relief to which Plaintiff and the Class are entitled.

52. Typicality. Plaintiff's claims arise from the same course of conduct, rest on the same representations appearing on the same packaging, and are premised on the same legal theories as the claims of the members of the proposed classes.

53. Adequacy. Plaintiff has no interests antagonistic to those of the proposed classes and has retained counsel experienced in consumer class action and food-labeling litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the classes.

54. Rule 23(b)(2). Defendant has acted on grounds generally applicable to the proposed classes, making final injunctive and corresponding declaratory relief appropriate on

a classwide basis, including an order requiring Defendant to cease representing that the Product is made with avocado oil unless and until that representation is accurate.

55. Rule 23(b)(3). A class action is superior to other available methods for adjudicating this controversy. The individual recovery available to any single purchaser is small relative to the cost of individual litigation, few class members could reasonably be expected to sue on their own, and concentrating the claims in this forum will conserve judicial and party resources and avoid inconsistent adjudications.

56. Ascertainability. The proposed classes are defined by objective criteria — purchase of an identified retail product during a defined period — and membership can be determined through Defendant's own records, retail loyalty-account data, and standard claims-administration procedures.

## CAUSES OF ACTION

### COUNT ONE

**Violation of the Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

57. Plaintiff realleges and incorporates each preceding paragraph.

58. The Product is a "good" within the meaning of California Civil Code § 1761(a). Plaintiff and the members of the California Subclass are "consumers" within the meaning of § 1761(d), and their purchases are "transactions" within the meaning of § 1761(e). Defendant is a "person" within the meaning of § 1761(c).

59. By representing on the Product's label that the Product is made with avocado oil and by declaring avocado oil as the sole edible oil ingredient, when the Product's lipid fraction is inconsistent with authentic avocado oil, Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of, at minimum:

a. Cal. Civ. Code § 1770(a)(5), by representing that the Product has characteristics and ingredients that it does not have;

b. Cal. Civ. Code § 1770(a)(7), by representing that the Product is of a particular standard, quality, or grade when it is of another; and

c. Cal. Civ. Code § 1770(a)(9), by advertising the Product with the intent not to sell it as advertised.

60. Defendant's representations were material. A reasonable consumer would attach importance to whether the oil in a food is the oil the label names, particularly where the named oil commands a premium and where a substantial segment of purchasers is seeking to avoid the substituted category of oil.

61. Plaintiff and the members of the California Subclass relied on Defendant's representations, and that reliance caused them to purchase the Product and to pay more for it than they otherwise would have.

62. Plaintiff presently seeks injunctive relief under the CLRA to enjoin the unlawful acts and practices described herein pursuant to § 1780.

63. Plaintiff and the California Subclass are entitled to injunctive relief and, upon expiration of the statutory notice period and amendment, to damages, restitution, punitive damages, and attorneys' fees and costs under California Civil Code § 1780.

## <u>COUNT TWO</u>

**Violation of the Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

64. Plaintiff realleges and incorporates each preceding paragraph.

65. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.

66. Unlawful. Defendant's labeling of the Product violates 21 U.S.C. § 343; 21 C.F.R. § 101.4(a)(1); and the CLRA and FAL provisions invoked in this Complaint. Each supplies a predicate for liability under the unlawful prong.

67. Unfair. Defendant's conduct offends the public policy embodied in the federal and California food-labeling statutes cited above; causes substantial injury to consumers that they could not reasonably have avoided, since the substitution is undetectable at the point of sale and by ordinary use; and produces no

countervailing benefit to consumers or to competition. To the contrary, it disadvantages competitors that source and pay for authentic avocado oil.

68. Fraudulent. Defendant's representations were likely to deceive, and did deceive, reasonable members of the consuming public.

69. As a direct and proximate result, Plaintiff and the California Subclass lost money or property and are entitled to restitution, injunctive relief and all other relief under Cal. Bus. & Prof. Code § 17203.

**COUNT THREE**

**Violation of the False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

70. Plaintiff realleges and incorporates each preceding paragraph.

71. The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

72. Defendant disseminated, and caused to be disseminated, statements concerning the Product — on its packaging and in its marketing — that were untrue or misleading, and that Defendant knew, or in the exercise of reasonable care should have known, to be untrue or misleading.

73. The misrepresentation by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, et seq.

74. Defendant's knowledge or constructive knowledge is established by the published scientific literature documenting avocado oil adulteration; by Defendant's own supplier-qualification and quality-assurance responsibilities as the owner of the

brand appearing on the package; and by the analytical testing capability available to a national grocery retailer of Defendant's scale.

75. Plaintiff and the California Subclass relied on those statements, purchased the Product, and lost money as a result. They are entitled to restitution and injunctive relief under Cal. Bus. & Prof. Code § 17535.

76. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Class Members are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages.

77. Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff and the Members of the Classes would be left without the parity in purchasing power to which they are entitled.

## <u>COUNT FOUR</u>

**Breach of Express Warranty**

**(On Behalf of Plaintiff and the Nationwide Class, or Alternatively the California Subclass)**

78. Plaintiff realleges and incorporates each preceding paragraph.

79. Defendant's statement that the Product is "Made With Avocado Oil," and its declaration of avocado oil as the sole edible oil ingredient, are affirmations of fact and descriptions of the goods that became part of the basis of the bargain and created an express warranty that the Product would conform to those affirmations and descriptions.

80. The Product did not conform. Its lipid fraction is inconsistent with authentic avocado oil and reflects substitution or dilution with undisclosed seed oils. Defendant thereby breached the express warranty.

81. As a direct and proximate result of the breach, Plaintiff and the Class did not receive the benefit of their bargain and suffered damages in the amount of the purchase price or the difference in value between the Product as warranted and the Product as sold.

**COUNT FIVE**

**Unjust Enrichment**

**(Pleaded in the Alternative, on Behalf of Plaintiff and the Nationwide Class)**

82. Plaintiff realleges and incorporates each preceding paragraph, and pleads this Count in the alternative to the extent no adequate remedy at law is available.

83. Plaintiff and the Class conferred a benefit on Defendant in the form of the purchase price of the Product, including the premium attributable to the avocado oil representation. Defendant knew of and accepted that benefit.

84. Defendant voluntarily obtained and retained that benefit. Under the circumstances, it would be inequitable for Defendant to retain the premium without compensating Plaintiff and the Class in light of the unlawful misrepresentation.

85. Plaintiff and the Class are entitled to restitution and disgorgement of the amounts by which Defendant was unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed classes, respectfully requests that the Court enter judgment as follows:

A. Certifying the proposed Nationwide Class and California Subclass under Rule 23, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B. Declaring that Defendant's labeling and marketing of the Product violate the CLRA, the UCL, and the FAL, and that Defendant has breached its express warranties;

C. Enjoining Defendant from representing that the Product is made with avocado oil, or declaring avocado oil as the Product's sole edible oil ingredient, unless and until that representation conforms to the Product's actual composition;

D. Awarding damages, restitution, and disgorgement in an amount to be proven at trial;

E. Awarding punitive damages to the extent permitted by law;

F. Awarding pre-judgment and post-judgment interest as permitted by law;

G. Awarding reasonable attorneys' fees, expenses, and costs, including under Cal. Civ. Code § 1780(e) and any other applicable authority; and

H. Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated:

By: _/s/ Todd S. Eagan_
Todd S. Eagan, Esq. (CA Bar No. 207426)
**EAGAN LAW CORPORATION**
401 Wilshire Boulevard, 12th Floor
Santa Monica, CA 90401
Ph: (310) 304-3302
teagan@eagan.law

Steven. A Schwartz*
Beena M. McDonald (CA Bar No. 365776)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Tel.: 610-642-8500
Fax: 610-649-3633
sas@chimicles.com
bmm@chimicles.com

James J. Rosemergy*
**CAREY & DANIS LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, Missouri 63105
Telephone: (314) 725-7700
jrosemergy@careydanis.com

* *pro hac vice forthcoming*

*Attorneys for Plaintiff and the Class*